# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

TYRONE REYNOLDS        *

         Plaintiff        *

         v.        *       Civil Case No. 8:21-cv-00948-AAQ

UNITED STATES OF AMERICA        *

         Defendant        *

## MEMORANDUM OPINION

This is a case concerning an accident that occurred between a postal vehicle and an individual standing nearby. Pending before the Court is Defendant United States of America's Motion for Summary Judgment. ECF No. 34. The evidentiary record in the case is fairly limited; however, the facts, based on the record before the Court, are relatively straightforward. An employee of the United States Postal Service drove past Tyrone Reynolds, the Plaintiff in this case. According to the undisputed evidence presently before the Court, the driver of the vehicle, despite being aware that Plaintiff was near the vehicle, turned sharply to the left, and the vehicle struck the Plaintiff. Although he suffered only limited damages, the facts above are not, at this point, disputed in any meaningful way.[1] Accordingly, for these reasons and the reasons discussed below, Defendant's Motion for Summary Judgment shall be denied.

## BACKGROUND

---

[1] Although Defendant's Interrogatory Responses state that the "United States Postal Service has no record that the alleged occurrence, described in the Claim for Damage, Injury or Death (Standard Form 95) and the Complaint, took place[,]" *e.g.* ECF No. 34-7, at 7, it does not present any facts in support of its position or present any alternative explanation of the events that led to Plaintiff being struck.

On August 16, 2017, Tyrone Reynolds, a full-time employee of Skillforce – a Virginia-based labor contractor – arrived at a United States Postal Service ("USPS") facility in Capitol Heights, Maryland.[2]  ECF No. 34-2, at 8-9.  Mr. Reynolds performed manual labor at the facility for approximately three months between April and June of 2017.  *Id.* at 8.  Altogether, Mr. Reynolds worked for Skillforce for approximately eighteen months.  *Id.* at 6.

On the day of the accident, Mr. Reynolds, using tape and approximately fifteen cones, cordoned off a portion of a ten-foot hallway connecting two ends of the postal facility.  *Id.* at 11 (stating that the hallway was ten feet wide and that he cordoned off an area roughly four feet wide and twenty-five feet long).  Mr. Reynolds cordoned off the area specifically so that individuals walking by would not be hit with any debris that fell from above, where his colleague was installing new lighting.  *Id.* at 10.  Once Mr. Reynolds had finished setting up the area, upon the instruction of and with the approval of his colleague, *id.* at 12, 13, Mr. Reynolds positioned himself just outside the cones.  *Id.* at 15.  According to Mr. Reynolds, he was approximately one-inch outside the cordoned-off area, right next to one of the cones.  *Id.*  This placement ensured that Mr. Reynolds could warn any other individuals at risk of entering the area of the danger above while preventing himself from being hit.  *Id.* at 10; *id.* at 15 (stating in response to a question as to why he did not stand inside the cones: "You're supposed to stand outside the cone. . . . Because something could fall on you too").  To facilitate others seeing him, Mr. Reynolds was wearing bright clothing, including an orange hard hat and a green safety jacket with

---

[2] In his Complaint, at his deposition, and in his Incident Report Form, Plaintiff provided varying information regarding the precise location of the USPS facility where the accident occurred.  *See* ECF No. 1, at 2 (stating that accidence occurred in Capitol Heights, MD); ECF No. 34-2, at 8 (testifying that the accident occurred at a postal facility "off of Central Avenue"); ECF No. 34-6, at 2 (stating that the accident occurred in Washington, DC).  However, the United States has acknowledged that the incident occurred at 9201 Edgeworth Drive, Capitol Heights, MD 20790. ECF No. 34-1, at 3, n. 2.

gray and orange portions.  *Id.* at 18.  Although Mr. Reynolds concedes he had cordoned off "a big area", there remained enough room for other individuals to traverse down the hallway.  *Id.* at 11.

At around 9:30 a.m., while Mr. Reynolds was standing watch, he observed a vehicle driving towards him; attached to the rear of the vehicle were two carts filled with mail.  *Id.* at 13.  Although the precise speed is not clear from the record, the vehicle was traveling at a speed somewhere between five and ten miles per hour.  *Id.* at 18.  According to Mr. Reynolds, the vehicle's travel path was not unusual.  The facility was set up such that mail that had been collected on one side of the building was transported to the other side of the building where it was sorted and then "processed for delivery on the street."  *Id.* at 10.  Accordingly, the parties do not dispute that the vehicle's driver was performing a lawful activity required by his job.  *Id.* at 17.  According to Mr. Reynolds, the vehicle passed within one inch of where he was standing.  *Id.* at 18.  As the vehicle was passing, both Mr. Reynolds and the driver of the vehicle made eye contact.  *Id.* at 13.

Once the vehicle had passed Mr. Reynolds, *id.* at 20, Mr. Reynolds' colleague directed him to watch for any debris that may soon fall.  *See id.* at 13 ("So when the electrician say pay attention, I took my eyes off [of the driver] because he was already gone."); *id.* ("So, as he came past, you know . . . [the] electrician told me to pay attention, so I turned my back to listen to the electrician"); *id.* at 14. In response, Mr. Reynolds turned his back towards the hall to look towards his colleague.  *Id.* at 14. However, at the same time that Mr. Reynolds turned his back, the driver of the vehicle turned sharply to the left.  *Id.* at 13.   The two bins trailing the vehicle swung towards Mr. Reynolds and the last bin struck him in the back.  *Id.* at 14.  Mr. Reynolds fell to the ground, *id.*, *id.* at 17, where he remained for approximately forty-five minutes.  *Id.* at 21.  Mr. Reynolds concedes that had he been standing inside the cones, he would not have been struck.  *Id.* at 15.

3

On April 16, 2021, Mr. Reynolds filed suit in this Court, alleging that the driver negligently struck him and seeking damages related to his medical treatment, as well as pain and suffering he experienced after the accident. ECF No. 1, at 4. Altogether, Plaintiff sought $50,000 in the Complaint. *Id.* at 4. On January 26, 2022, Mr. Reynolds responded to the interrogatories the United States had propounded on him. Specifically, in response to a request for an itemization of damages, Mr. Reynolds listed less than $2,600 in medical damages. ECF No. 34-5, at 15. On July 25, 2022, this case was referred to my Chambers for all further proceedings. ECF No. 29. On August 31, 2022, Defendant filed a Motion for Summary Judgment, ECF No. 34, which is now fully briefed. ECF No. 39, 42.

## STANDARD OF REVIEW

The Court will only grant a motion for summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The party moving for summary judgment bears the burden of showing that there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

## ANALYSIS

The United States moves for summary judgment on four separate, but related grounds. First, the United States argues that Mr. Reynolds has "not established the United States owed him

a duty." ECF No. 34-1, at 12.  Second, the United States argues that Mr. Reynolds has "not established that the vehicle was driven negligently". *Id.*, at 11.  Third, the United States asserts that Mr. Reynolds "has not established that negligence by the United States was the proximate cause of his injury." *Id.* at 16.  Finally, the United States argues that because Mr. Reynolds stood outside of the area he had cordoned off, he was contributorily negligent and, thus, barred from recovery. *Id.* at 17.

Sovereign immunity shields the United States from suit for a civil tort absent an express waiver. *See Kerns v. United States*, 585 F.3d 187, 193-94 (4th Cir. 2009).  The Federal Tort Claims Act ("FTCA") contains a limited waiver of sovereign immunity, allowing a plaintiff to sue the United States for monetary damages for injuries for torts by "any employee of the Government" acting within the scope of employment.  28 U.S.C. § 1346(b)(1).  Such employees include "officers or employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." *Id.* § 2671.  Although the FTCA is a federal statute, "state law governs the substantive duties of the United States under the FTCA." *Harris-Reese v. United States*, 615 F.Supp.3d 336, 361 (D. Md. 2022).

To prove negligence under Maryland law, a plaintiff must show that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Valentine v. On Target, Inc.,* 353 Md. 544, 549, 727 A.2d 947 (1999).

## I.   Existence of a Duty

Plaintiff alleges in the Complaint that the driver of the vehicle was an agent of the United States, and therefore the United States owed him a duty. ECF No. 1, at 2. Ordinarily, "[t]he existence of an agency relationship is a question of fact which must be submitted to the factfinder if any legally sufficient evidence tending to prove the agency is offered." *Faya v. Almaraz,* 329 Md. 435, 460, 620 A.2d 327, 339 (1993); *see White v. Date Trucking, LLC*, No. ELH-17-1177, 2018 WL 2462921, at *10 (D. Md. Jun. 1, 2018); *Lopez-Krist v. Salvagno*, No. ELH–12–01116, 2013 WL 5705437, at *7 (D. Md. Oct. 17, 2013); *see also P. Flanigan & Sons v. Childs*, 251 Md. 646, 652, 248 A.2d 473, 476 (1968) (declaring that the existence of an agency relationship is ordinarily a question of fact). "[I]t is not for the court to determine the question of agency *vel non*; but if the testimony as to the fact of the agency tends to prove the existence of that relation, it should be submitted to the [trier of fact], who [is] the exclusive judge[] of its weight." *Levine v. Chambers,* 141 Md. 336, 343, 118 A. 798, 800 (1922).

Plaintiff testified as to facts from which the trier of fact could reasonably conclude, given the United States' failure to present any evidence to the contrary, that the individual who struck him was an employee of the United States. Plaintiff testified that he arrived to work that day at a United States Postal Service facility; he described in detail the structure of the facility, including the fact that mail was delivered to one end of the facility and then transported to the other end of the facility on a regular basis throughout the day, including passing through the hallway where he was hit; finally, he described that he was struck by a vehicle which was, as such, transporting mail.

These facts are particularly relevant, for "under Maryland law[,] there is a presumption that 'the negligent operator of a vehicle is the agent, servant, or employee of the owner acting within the scope of his employment.'" *Mackey v. Dorsey*, 104 Md.App. 250, 260, 655 A.2d 1333, 1339 (1995). Accordingly, that Plaintiff was struck by a vehicle carrying mail creates a presumption

6

that the driver of the vehicle was an agent of the owner of the vehicle transporting the mail.  In similar circumstances, this Court has held that questions of duty should be decided at trial.  *See Todd v. Xoom Energy Maryland, LLC*, No. GJH-15-154, 2020 WL 1552769, at *10 (D. Md. Mar. 31, 2020) (denying motion for summary judgment and allowing jury to decide issue even where the materials "do not provide definitive proof of an agency relationship").  The sole case on which the United States relies is clearly distinguishable, as in that case "[t]he only evidence of any relationship between Doe and the other Defendants [were] the unsubstantiated allegations made by the Plaintiff in her complaint."  *Myers v. DuBrueler*, No. 3:15-CV-56, 2016 WL 3162063, at *3 (N.D. W. Va. Jun. 3, 2016).  As noted above, this is not the case here.

The United States' other arguments do not undercut this conclusion.  Although the United States faults Plaintiff for failing to identify the specific type of vehicle being driven, ECF No. 34-1, at 13, the relevance of this fact is unclear.[3]  Plaintiff testified that the vehicle was performing a function typical of the type performed within the facility.  Whether the vehicle was a forklift, ECF No. 34-2, at 16, or another type of vehicle does little to either establish or undercut the agency relationship between the driver and the United States.  Likewise, although the United States faults Plaintiff for failing to provide details regarding the identity of the driver, at the deposition, the United States' questions of Plaintiff assumed that the driver was a "postal worker."  *See id.* at 11 ("And at the time you had set up the cones, postal workers were working to transport the mail from one side of the building to the other side to be sorted and distributed?"); *id.* at 13 ("Can you tell

---

[3] Additionally, although the United States emphasizes that by failing to answer the Requests for Admission, Plaintiff has conceded the assertions therein, ECF No. 34-1, at 2, the United States does not attach the photo of the vehicle which Plaintiff conceded he was struck by, as a result of failing to respond to the Requests.  *See* ECF No. 34-4, at 3 (asking Plaintiff to admit the "vehicle depicted in USA-0076 is the type of vehicle used to transport mail that was involved in the occurrence.").

7

me which side of the building the postal worker was coming from?"); *id.* ("You saw the postal worker?").  Under such circumstances, Plaintiff cannot be faulted for failing to affirmatively identify him as such.

Accordingly, for the aforementioned reasons, Plaintiff's testimony, given the United States' failure to present any evidence to the contrary, is sufficient to create a triable issue of fact as to whether the driver was an agent of the United States.

## II.   Breach of Duty

"Drivers have a duty to exercise reasonable care for the sake of pedestrians and other motorists."  *Germain v. Norris*, 536 F.Supp.2d 585, 588-89 (D. Md. 2008); *see also Lockard v. Star Coaches*, No. ADC-21-1013, 2021 WL 5234518, at *2 (D. Md. Nov. 9, 2021) ("Maryland law is clear: drivers have a duty to exercise reasonable care and avoid collisions with pedestrians.").  In particular, "[d]rivers of motor vehicles have a duty to both 'observe carefully the road in front of them'[,] . . . 'be reasonably aware of what is occurring along the sides of a street or highway[,]'" *Ayala v. Lee*, 215 Md.App. 457, 469, 81 A.3d 584, 591-92 (2013) (quoting *Morris v. Williams*, 258 Md. 625, 628, 267 A.2d 148, 150 (1970)), and adjust their actions accordingly.  *See Flohr v. Coleman*, 245 Md. 254, 266, 225 A.2d 868, 875 (1967) (finding that trial judge properly "pointed out the particular duty of a driver, blinded by the lights of an approaching vehicle, to slow down to avoid hitting a pedestrian who might be on the highway").

As noted above, the facts of the case are relatively straightforward.  Given the United States' failure to present any evidence in response, for the purpose of the present Motion, I will accept them as presented by the Plaintiff.  According to the unchallenged facts, the driver of a postal vehicle trailed by two bins full of mail passed within an inch of Plaintiff.  *See Jordan v. Torain*, No. 1320, 2015 WL 5968530, at *9 (Md. App. Jul. 23, 2015) ("The size and weight of a

motor vehicle are important factors in determining the question of negligence, whether the motor vehicle is a small motorized scooter or a large commercial truck."); *Baublitz v. Henz*, 73 Md.App. 538, 547, 535 A.2d 497, 501 (1988) ("[D]rivers of large, heavy vehicles owe a duty to take those elements into consideration in the operation thereof.").  As the driver passed Plaintiff, his eyes met Plaintiff's, establishing that the driver was aware of his presence, as well as the close distance between the vehicle and Plaintiff.  The driver's awareness of Plaintiff is further supported by the fact that Plaintiff was wearing a green vest with orange portions, as well as an orange construction hat.  Despite being aware of Plaintiff's presence outside of the cones and in close relation to the vehicle, the driver turned sharply to the left, resulting in one of the bins trailing his vehicle to strike Plaintiff and causing him to fall.  Based on these facts, Plaintiff has created a triable issue of fact as to whether the driver failed to exercise proper care by failing to take precaution to ensure that Plaintiff would not be struck.  *See Critzer v. Shegogue*, 236 Md. 411, 419, 204 A.2d 180, 184 (1964) ("[I]f a motorist sees, or should have seen, a pedestrian in a position of danger, then he . . . should use the means available to him to avoid injury to the pedestrian. This duty on the part of a motorist is basic and fundamental, and to state that there is no such duty would be tantamount to a holding that a motorist could, without responsibility therefore, recklessly or deliberately injure a pedestrian.").

　　　While the United States emphasizes that Plaintiff was standing outside the cones when he was struck, ECF No. 34-1, at 12, this does not automatically absolve Defendant of liability, particularly where the accident occurred in a location shared by pedestrians and vehicles.[4]  *See*

---

[4] Although the photographs submitted by the United States indicate that the hallway was split between areas for pedestrian and vehicular traffic, ECF No. 34-3, at 4-5, Plaintiff had cordoned off an area four feet from the wall, effectively blocking the portion of the hall designated for pedestrian traffic.  As Plaintiff testified, he was stationed to warn pedestrians walking past of the danger within the cordoned off area.

*Whitt v. Dynan*, 20 Md.App. 148, 160, 315 A.2d 122, 161 (1974) ("[I]t follows that where no sidewalks exist the motorist has at all times a duty to anticipate the presence of pedestrians on his right as well as a duty to avoid striking pedestrians on his right.  The motorist's ability to carry out these duties by looking for pedestrians and avoiding them by moving out of the way is not affected by whether the pedestrian is facing the motorist or has his back to him.").

As Maryland has long recognized, "public highways are for the use of all and the rights of all engaged in the lawful use thereof, unless otherwise provided by statute, are equal and reciprocal, the pedestrian and the motorist, each owes to the other the duty of exercising reasonable care to avoid interference with the right of the other to use the highway in safety, and each is answerable to the other for harm caused by a breach of that duty." *Holler v. Lowery*, 175 Md. 149, 159, 200 A. 353, 357 (1938).  However, even in that context – which is distinct from that in this case – the obligation of an individual in a vehicle and the obligation of a pedestrian are not equivalent. "Because of the nature of the instrumentality which he controls, and the difference in the consequences incident to a breach of that duty by a motorist and a pedestrian respectively, ordinary care requires a motorist to exercise a higher degree of diligence, and caution to avoid a collision with a pedestrian than it would require of a pedestrian under similar circumstances, to avoid collision with an automobile." *Id.*; *see Cohen v. Rubin*, 55 Md.App. 83, 93, 460 A.2d 1046, 1052 (1983) (finding the following instructions on the duty of pedestrians and vehicles were properly given: "the driver of a motor vehicle is required to exercise much greater vigilance and caution to look out for the pedestrian than the pedestrian is required to exercise to look out for the driver. This is because of the fact that the pedestrian cannot usually harm the motorist by the way he uses the street and needs to look only after his own safety, whereas the motorist may kill or seriously injure the pedestrian and therefore should look out for the safety of the pedestrian as well as his

own.").   Unlike a highway, the driver here was operating in a shared-use hallway that accommodated both pedestrians and vehicles.  Such mixed-use – especially with a changed traffic pattern from cones and caution tape – supports a heightened duty for drivers to avoid collisions with individuals.

Likewise, courts in Maryland have recognized that even where other individuals may have acted out of the ordinary, a driver may have still breached a duty if they were aware of such action and failed to account for it.  *See Phillips v. Baltimore Transit Co.*, 194 Md. 527, 531, 71 A.2d 430, 432 (1950) ("Generally, when the driver of an automobile approaches a street car track at an intersection, he cannot assume that an approaching car will stop at the intersection, but he must pay attention to the approach of the car, and if he deliberately takes the risk of driving across the track in disregard of the danger of a collision, when a person of ordinary prudence would not take such a risk under the circumstances, he is guilty of negligence." (internal citations and quotation marks omitted)); *Holler*, 175 Md. at 159-60 (finding a triable question of fact existed where "the appellant had before his eyes a public highway crowded with pedestrians and vehicular traffic . . . and he must have seen too automobiles moving some in regular, others in erratic courses, proceeding in opposite directions" and so "[h]e should have anticipated that in that state of confusion automobiles might be driven on the wrong side of the street so as to endanger pedestrians who were lawfully and in the exercise of reasonable care walking there.").  For example, in the context of a driver who recognizes that a second driver is failing to yield way as he should, the court emphasized that the driver could not:

> continue to rely upon [that] assumption after he discovers, or by the exercise of reasonable care should have discovered, that [another] driver does not intend to yield the right of way, and, if after such discovery or failure to exercise reasonable care to make the discovery, the privileged driver continues to pursue his course

> without exercising reasonable care for the safety of others, he may
> be held liable notwithstanding his right of way.

*Kelbaugh v. Mills*, 108 Md.App. 89, 97, 671 A.2d 41, 45 (1996) (quoting *Ghirardello v. Malina*, 238 Md. 498, 507, 209 A.2d 564, 569 (1965)).

Importantly, based on the facts before the Court at this time, this is not a case in which the driver was unaware of Plaintiff's presence or Plaintiff suddenly changed his location before the driver had time to adjust. *See Flyer v. Del Borrell*, 227 Md. 545, 550, 177 A.2d 865, 868 (Md. 1962) (affirming directed verdict for the defendant driver where "there is nothing to indicate that the driver of the car actually saw, or reasonably could or should have seen, the child until she suddenly appeared in front of her."). Rather, Plaintiff remained where the driver had seen him moments before. Nonetheless, the driver failed to take appropriate caution to avoid hitting him before turning the vehicle.[5]

Accordingly, Plaintiff has created a triable issue of fact as to whether the driver of the vehicle breached the relevant duty of care.[6]

## III.    Proximate Cause

---

[5] The driver could have, for example, stopped the vehicle and asked Plaintiff to move to avoid a collision or warned Plaintiff that he was turning before making a sharp left. There is no evidence before the Court that the driver took these or similar actions.

[6] The United States emphasizes that Plaintiff stated during his deposition that the driver did "nothing wrong" when he turned left. *See e.g.* ECF No. 34-1, at 9. In arguing that the statement constitutes an admission that the driver did not breach any duty, it reads the statement outside the relevant context. Plaintiff stated such in response to a series of questions as to whether the driver was following the proper path of delivery, as his job required, when he turned left. *See* ECF No. 34-2, at 17 (asking Plaintiff if "you didn't, and the electrician that you were working with didn't say at any point that traffic could not turn left there, correct?"; "they could [turn left there]?"; and finally, "so there was nothing wrong . . . when he drove the vehicle with the carts and made a left?"). He was not asked whether, nor did he concede that, the driver exercised the proper standard of care when following the allowed path.

"To be a proximate cause for an injury, the negligence must be (1) a cause in fact, and (2) a legally cognizable cause." *Pittway Corp. v. Collins,* 409 Md. 218, 243, 973 A.2d 771, 786 (2009) (internal quotations omitted). Causation-in-fact means that the defendant's actions actually produced the complained-of injury. *Id.* at 244. There are two tests for determining if causation-in-fact exists: the "but for" test and the "substantial factor" test. *Id.* "The 'but for' test applies in cases where only one negligent act is at issue" and causation is found "when the injury would not have occurred absent or 'but for' the defendant's negligent act." *Id.* "When two or more independent negligent acts bring about an injury, . . . the substantial factor test controls. Causation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Id.*

The second requirement to show proximate cause – that the negligence is a legally cognizable cause – requires the court "to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Id.* at 245. "The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct." *Id.* at 246.

The United States' arguments as to proximate cause are repetitive of their arguments as to breach. Defendant claims that Plaintiff has failed to present any evidence that the driver breached the relevant standard of care, and that any breach was the result of Plaintiff's failure to stand within the safety cones. ECF No. 34-1, at 16-17. For a defendant to prevail on the question of proximate cause on a motion for summary judgment, there must be "no room for doubt" that Plaintiff's actions directly contributed to the result. *See Owens v. Simon*, 245 Md. 404, 409, 226 A.2d 548, 551 (1967) ("[W]here, as here, there is no dispute as to what actually happened and where reasonable minds can draw but one inference from the facts as presented, the trial court may

13

resolve the issue in dispute as a matter of law."); *National Hauling Contractors Co. v. Baltimore Transit Co.*, 185 Md. 158, 165, 44 A.2d 450, 453 (Md. 1945) ("After giving one glance when he came to the building line of Baltimore Street, 32 feet from the nearest street railway tracks, and observing a trolley train approaching only 75 to 100 feet away, he kept right on going with unslackened speed . . . without even looking again-according to his own version.  In the face of this testimony there can be no recovery, for the chauffeur's action leaves no room for doubt that it directly contributed to the accident and was a proximate cause of it."); *Copenhaver v. Rent-a-Crane, Inc.*, No. 92-2439, 1994 WL 392292, at *3 (4th Cir. Jul. 28, 1994) ("Where the opportunity to avoid an accident is as available to the plaintiff as to the defendant, then the plaintiff's negligence is not a remote cause of the accident but continues as a proximate cause.").

As discussed above, although the driver was aware of Plaintiff's location, he still turned sharply to the left and struck Plaintiff.  Accordingly, based on the facts presented, Plaintiff's "negligence, if negligence it is . . . was at best 'merely passive and potential.'  On the other hand, [the driver's negligence] – failing to keep a proper lookout and control over his vehicle – was its 'moving and effective cause.'"  *Schwarz v. Hathaway*, 82 Md.App. 87, 95-96, 570 A.2d 348, 352-53 (1990).

Furthermore, contrary to the United States' arguments, and based on Plaintiff's uncontroverted testimony, his decision to stand outside the cones was not erroneous.  Rather, Plaintiff properly stood outside the cones per the relevant instructions from his colleague.  Had he stood within the cones, as he testified, he would have exposed himself to the danger of being hit by material falling from the work of the electrician overhead.

Under these circumstances, Defendant is not entitled to summary judgment based on proximate cause.

14

## IV.    Contributory Negligence

"[C]ontributory negligence is neglect of the duty imposed upon all men to observe ordinary care for their own safety, the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Dean v. Redmiles*, 280 Md. 137, 168, 374 A.2d 329, 346 (1977).  "Before a case may be taken from a jury on the ground of contributory negligence, the evidence must demonstrate a prominent and decisive act or omission of the plaintiff about which reasonable minds would not differ." *G.C. Murphy Co. v. Greer*, 75 Md.App. 399, 402, 541 A.2d 996, 997 (1988).

Defendant's arguments as to Plaintiff's contributory negligence are premised on his failure to stand within the cones and his turning of his back to the vehicle once the driver passed him but before he turned sharply to the left.  As discussed above, all available evidence, at this stage, supports the conclusion that Plaintiff did not act negligently when standing outside the cones.

Defendant's second argument likewise does not dictate a conclusion that Plaintiff was negligent as a matter of law.  Plaintiff did not turn his back to the vehicle out of inattentiveness or lack of care: instead, he was responding to his co-worker's direction that Plaintiff watch for materials that may be falling from overhead.  Again, the United States has presented no evidence challenging Plaintiff's testimony on this point.   Had the Plaintiff ignored his colleague's call, as Defendant suggests, he would have exposed himself to the alternative danger of being hit with material falling from above.  *See Legum v. Hough*, 192 Md. 1, 8, 63 A.2d 316, 319 (1949) ("The appellants also stress the failure of the appellee to keep looking to his right. But a driver cannot see in all directions simultaneously. It is his duty to look to his left and ahead as well as to his right.").  As noted above, based on the information before the Court, Plaintiff did not simply ignore his obligation to watch for oncoming traffic, but only turned away for an instant, as his colleague

15

called to him.  *See Sugar v. Hafele*, 179 Md. 75, 82, 17 A.2d 118, 121 (1941) ("[Plaintiff] cannot

invoke the protection of the statute or rule of the road if he blindly crosses without looking for

approaching traffic.'").  This case is not akin to one in which a plaintiff, as Defendant suggests,

ECF No. 42, at 4, dove into the shallow end of the pool, disregarding signs nearby marking the

limited depth of the water.  *See Leakas v. Columbia Country Club*, 831 F.Supp. 1231, 1234 (D.

Md. 1993).  In that case, the plaintiff had no basis for his actions and was solely responsible for

his harm.  In contrast, under the circumstances of this case, the Court cannot conclude, as a matter

of law, that Plaintiff was contributorily negligent.  *See Germain*, 536 F.Supp. 2d at 590 ("While

Barrett and Mass Electric might speculate that Mrs. Germain could have acted differently, the

evidence does not support a finding that she *should* have acted differently.").

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is, hereby,

denied.  Within fourteen days of the filing of this Opinion, the parties shall confer as to their

amenability to referral for a settlement conference and advise the Court of their positions promptly

thereafter.

So ordered.

Date:  May 10, 2023                                      _____/s/_____

                                                                 Ajmel A. Qureshi
                                                                 U.S. Magistrate Judge